NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 15188

NATIONAL UTILITY REVIEW, LLC,

Plaintiff,

vs.

HUNTER MANAGEMENT L.L.C.,
ERIC ROTHNER, AND DAVID M.
ARONIN

Defendants.

**COMPLAINT**
**(Jury Trial Demanded)**

NOW COMES Plaintiff, National Utility Review, LLC, by and through its undersigned counsel, and complains against Defendant Hunter Management L.L.C., Defendant Eric Rothner, and Defendant David M. Aronin as follows:

## PARTIES

1.      National Utility Review, LLC ("Plaintiff") is a limited liability company organized and existing under the laws of the state of North Carolina with its principal office and place of business located in Guilford County, North Carolina.  Plaintiff is in the business of auditing utility and telecommunication invoices of business clients for the purpose of determining potential cost savings to the client based upon Plaintiff's analysis of such invoices and its knowledge of the market, and uncovering billing errors for the purpose of determining entitlement to refunds and/or rebates.

2.      Defendant Hunter Management L.L.C. ("Hunter Management") is a limited liability company organized and existing under the laws of the state of Illinois with its

principal office and place of business located at 2201 W. Main Street, Evanston, Illinois, 60202.

      3.      Upon information and belief, Defendant Eric Rothner ("Rothner") is a resident of Cook County, Illinois. Upon information and belief, Rothner is a manager of Hunter Management and was at all times pertinent to this lawsuit a controlling shareholder in and the President/CEO of Care Centers, Inc. ("Care Centers"), an entity more fully discussed below.

      4.      Defendant David Aronin ("Aronin") is a resident of Cook County, Illinois. Upon information and belief, Aronin was at all times pertinent to this lawsuit a director and the Secretary/CFO of Care Centers and a manager of Hunter Management.

      5.      On October 30, 2007, Plaintiff instituted an action against Care Centers in the Superior Court of Guilford County (the "Care Centers Lawsuit"). Care Centers is a corporation also organized and existing under the laws of the state of Illinois and at all times pertinent to this lawsuit had its principal office and place of business located at 2201 W. Main Street, Evanston, Illinois, 60202, the same address as that of Hunter Management. Upon information and belief, until on or about October 6, 2009 and for at least some of the time pertinent to this action, Care Centers operated and/or managed multiple elderly care centers in the Illinois/Indiana/Ohio geographic area, some of which elderly care centers were owned in whole or in part by Rothner or Aronin or entities in which Rothner or Aronin or members of Rothner's immediate family held, directly or indirectly, an ownership interest.

2

6.      In the Care Centers Lawsuit, Plaintiffs asserted claims for relief for breach of contract by Care Centers and unfair and/or deceptive trade practices by Care Centers against Plaintiff. A copy of Plaintiff's complaint initiating the Care Centers Lawsuit ("the Care Centers Complaint") is attached hereto as **Exhibit 1**.

7.      On February 4, 2008, Care Centers responded to the Care Centers Complaint. Care Centers' response contained a motion to dismiss based on lack of personal jurisdiction. A copy of Care Centers' response is attached hereto as **Exhibit 2**.

8.      On September 18, 2008, the Honorable Lindsay R. Davis, Jr., Superior Court Judge presiding, entered an order denying Care Centers' motion to dismiss based on lack of personal jurisdiction. On September 24, 2008, Care Centers filed a notice of appeal from Judge Davis' order and subsequently perfected such appeal to the North Carolina Court of Appeals. The North Carolina Court of Appeals, by unanimous decision of a three-judge panel and memorandum opinion dated October 6, 2009, affirmed the aforesaid September 18, 2008 order of Judge Davis. A copy of the Court of Appeals' October 6, 2009 opinion is attached hereto as **Exhibit 3**.

9.      Upon information and belief, also on October 6, 2009, Care Centers filed a petition with the United States Bankruptcy Court for the Northern District of Illinois (Case No. 09-37217) seeking debtor relief under Chapter 7 of the United States Bankruptcy Code. Upon further information and belief, an order for relief was entered in such bankruptcy case and such case remains pending at this time with Eugene Crane, Esq. serving as Trustee.

3

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this lawsuit.

11.     This Court has personal jurisdiction over Hunter Management, Rothner, and Aronin under N.C.G.S. §1-75.4 *et seq.*, including, without limitation, §1-75.4(4)a, §1-75.4(4)b, §1-75.4(5)b, §1-75.4(5)d, §1-75.4(5)e, and/or §1-75.4(6)b.

12.     Venue is proper in Guilford County, North Carolina pursuant to N.C. Gen. Stat. §1-80.

## FACTUAL BACKGROUND

13.     In or about April of 2006, at the request of a person who, upon information and belief, was an employee of Hunter Management, Plaintiff, by and through its representative Barry Christopher Leng, approached Care Centers by email and/or telephone from a location within Guilford County, North Carolina concerning the possibility of Plaintiff providing its services to Care Centers.

14.     Thereafter, Plaintiff and Care Centers entered into three agreements whereby Care Centers became a business client of Plaintiff. Upon information and belief, Aronin executed the first of such agreements only in his capacity as CFO of Care Centers. Upon further information and belief, Aronin executed the other two agreements not only in his capacity as CFO of Care Centers, as shown, but also as manager of Hunter Management, and/or within the course of scope of his duties and responsibilities as manager of Hunter Management and/or for the benefit of Hunter Management.

15.     The first such agreement was dated May 25, 2006, and was captioned "Refunds Only Agreement." A copy of such agreement is attached hereto as **Exhibit 4**

4

(hereinafter "the Exhibit 4 Agreement"). Pursuant to the Exhibit 4 Agreement, Care Centers and Hunter Management agreed to pay to Plaintiff a fifty-percent (50%) share of any rebates and/or refunds to which Care Centers or Hunter Management, as the case may be, was entitled relating to utility billing errors, which rebates and/or refunds were uncovered as a result of Plaintiff's auditing efforts with respect to ten (10) specifically targeted business premises of Care Centers. Upon information and belief, such ten (10) specifically targeted business premises were identified on a list of locations and addresses of Care Centers locations prepared by Aronin or under Aronin's direction in Illinois and attached by Aronin or at Aronin's direction in Illinois to the primary text of what subsequently became the Exhibit 4 Agreement.

16.    The aforesaid primary text of the Exhibit 4 Agreement had previously been prepared by Plaintiff in North Carolina and sent by facsimile to Care Centers in Illinois for execution by Aronin on behalf of Care Centers. Said primary text did not include the aforesaid list of locations and addresses.

17.    Upon further information and belief, the aforesaid ten (10) specifically targeted business premises identified by Aronin or at Aronin's direction on the list of locations and addresses of the Exhibit 4 Agreement were the only Care Centers locations with respect to which Plaintiff's service would apply, as proposed by Aronin, and included some, but not all, of the elderly care centers operated by Care Centers in Illinois and other states.

5

18.     With the proposed list of locations and addresses attached, Aronin faxed the Exhibit 4 Agreement from Illinois back to Plaintiff in North Carolina, executed by Aronin on behalf of Care Centers as aforesaid.

19.     Upon receipt by Plaintiff in North Carolina of the Exhibit 4 Agreement, with the proposed list of locations and attachments attached, Plaintiff accepted such list as the list of locations to which Plaintiff's services would apply, as proposed by Aronin, and began dutifully providing services from within North Carolina pursuant to the Exhibit 4 Agreement, found no rebates or refunds due Care Centers at any of the elderly care center locations whose business records were the subject of review by Plaintiff, and accordingly charged no fees to Care Centers.

20.     The second such agreement was dated May 30, 2006, and was captioned "Telephone Audit Agreement."  A copy of such agreement is attached hereto as **Exhibit 5** (hereinafter "the Exhibit 5 Agreement").  Pursuant to the Exhibit 5 Agreement, Care Centers or Hunter Management, as the case may be, agreed to compensate Plaintiff by paying to Plaintiff a share of any rebates, cost savings and/or refunds received as a result of Plaintiff's audit-related efforts with respect to the business telephone services of or pertaining to nineteen (19) specifically targeted business premises of Care Centers and Hunter Management, by and through its manager and agent Aronin, agreed to compensate Plaintiff by paying to Plaintiff a share of any rebates, cost savings and/or refunds received as a result of Plaintiff's audit-related efforts with respect to the business telephone services of or pertaining to its headquarters building located at 2201 West Main Street in Evanston, Illinois, which headquarters building was also identified on said

6

list of locations and addresses, which share of rebates/refunds was based on a schedule contained in the Exhibit 5 Agreement and may be summarized as follows:

     a.   Plaintiff was to receive a fifty-percent (50%) share of all rebates/refunds received by Care Centers or Hunter Management, as the case may be, as a result of Plaintiff's efforts;

     b.   Plaintiff was to receive a percentage share of all savings created by Plaintiff's efforts, starting with the first full month of actual savings as follows:

          i.   Year 1 – 50% of the first twelve months of actual savings, payable monthly;

         ii.   Year 2 – 40% of the next twelve months of actual savings, payable monthly.

21.     Upon information and belief, the aforesaid list of locations and addresses was prepared by Aronin or under Aronin's direction in Illinois and attached by Aronin or at Aronin's direction in Illinois to the primary text of what subsequently became the Exhibit 5 Agreement.

22.     The aforesaid primary text of the Exhibit 5 Agreement had previously been prepared by Plaintiff in North Carolina and sent by facsimile from North Carolina to Care Centers in Illinois for execution by Aronin on behalf of Care Centers. Said primary text did not include any attached list of business locations to which Plaintiff's services would apply.

7

23.     Upon further information and belief, the aforesaid nineteen (19) specifically targeted business premises of Care Centers and the single facility of Hunter Management (its headquarters building) identified by Aronin on the list of locations and addresses attached to the Exhibit 5 Agreement were the only locations of facilities with respect to which Plaintiff's services would apply, as proposed by Aronin. Such list included some, but not all, of the elderly care centers operated by Care Centers in Illinois and other states, as well as just one facility of Hunter Management, to wit: the building utilized by Hunter Management as its headquarters located at 2201 West Main Street in Evanston, Illinois.

24.     With the proposed list of locations and addresses attached, Aronin faxed the Exhibit 5 Agreement from Illinois back to Plaintiff in North Carolina.

25.     Upon receipt by Plaintiff in North Carolina of the Exhibit 5 Agreement, with the proposed list of locations and addresses attached, Plaintiff accepted such list as a complete list of all locations to which Plaintiff's services would apply as proposed by Aronin and began dutifully providing services from within North Carolina pursuant to the Exhibit 5 Agreement. Such services included the analysis of local and long distance telephone charges as disclosed in Care Centers' and/or Hunter Management's business telephone records, copies of which business telephone records were subsequently provided by Aronin or under his direction from a location in Illinois to Plaintiff in North Carolina, as contemplated by the Exhibit 5 Agreement. After a thorough review by Plaintiff, no refunds were found owing to Care Centers or Hunter Management, but certain cost-saving opportunities were found and identified to Care Centers and Hunter

8

Management by Plaintiff. Plaintiff is informed, believes and so alleges that, under the terms of the Exhibit 5 Agreement, Care Centers and/or Hunter Management are indebted to Plaintiff as a result of the finding and identifying of such cost-saving opportunities, from the point in time when Care Centers or Hunter Management, as the case may be, took action to achieve the cost savings recommended by Plaintiff and throughout the term of the Exhibit 5 Agreement.

26.     The third such agreement, also dated May 30, 2006, was captioned "Utility Audit Agreement." A copy of such agreement is attached hereto as **Exhibit 6** (hereinafter "the Exhibit 6 Agreement"). Pursuant to the Exhibit 6 Agreement, Care Centers and Hunter Management (by and through its manager and agent Aronin), as the case may be, agreed to pay to Plaintiff, as its compensation for services to be provided, a share of any rebates, refunds and/or cost savings received as a result of Plaintiff's audit-related efforts with respect to nineteen (19) specifically identified business premises of Care Centers and the one (1) facility of Hunter Management as follows:

    a. Plaintiff was to receive as compensation a fifty-percent (50%) share of all rebates, refunds and/or cost savings received by Care Centers or Hunter Management, as the case may be, as a result of Plaintiff's efforts;

    b. Plaintiff was to receive as compensation a percentage share of all savings created by Plaintiff's efforts, starting with the first full month of actual savings as follows:

        i. Year 1 – 50% of the first twelve months of actual savings, payable monthly;

ii.  Year 2 – 40% of the next twelve months of actual savings, payable monthly.

27.     Upon information and belief, the aforesaid nineteen (19) specifically targeted business premises of Care Centers and the one (1) facility of Hunter Management to which the Exhibit 6 Agreement applied were identified on a list of locations and addresses prepared by Aronin or under Aronin's direction in Illinois and attached by Aronin or at Aronin's direction in Illinois to the primary text of what subsequently became the Exhibit 6 Agreement.

28.     The aforesaid primary text of the Exhibit 6 Agreement had previously been prepared by Plaintiff in North Carolina and sent by facsimile to Care Centers in Illinois for execution by Aronin on behalf of Care Centers and Hunter Management in Illinois. Said primary text did not include any attachment of locations and addresses.

29.     Upon further information and belief, the aforesaid nineteen (19) specifically targeted business premises of Care Centers and the one (1) facility of Hunter Management identified by Aronin on the aforesaid list of the Exhibit 6 Agreement included some, but not all, of the elderly care centers operated by Care Centers in Illinois and other states, as well as the building utilized by Hunter Management as its headquarters located at 2201 W. Main Street in Evanston, Illinois.

30.     With the proposed list of locations and addresses attached, Aronin faxed the Exhibit 6 Agreement from Illinois back to Plaintiff in North Carolina.

31.     Upon receipt by Plaintiff in North Carolina of the Exhibit 6 Agreement with said list of locations and addresses attached, Plaintiff accepted such list as being the only facilities to which Plaintiff's services would apply, as proposed by Aronin.

10

32.     Shortly thereafter, from within Guilford County, North Carolina, Plaintiff dutifully began providing services pursuant to the Exhibit 6 Agreement. To facilitate Plaintiff's audit-related efforts, both Care Centers and Hunter Management, upon information and belief and with the knowledge and approval of Aronin and Rothner, provided Plaintiff with copies of invoices, as contemplated by the Exhibit 6 Agreement. Upon information and believe, such invoices were in fact sent from Illinois to Plaintiff in North Carolina by Aronin or under his direction in his capacity as CFO of Care Centers or as manager of Hunter Management, as the case may be.

33.     Thereafter, two (2) invoicing errors pertaining to Care Centers were found by Plaintiff and identified to Care Centers by Plaintiff. Thereafter, refunds were obtained by Plaintiff for Care Centers, and received by Care Centers, in the amounts of $986.40 and $777.75 respectively, and Care Centers caused Plaintiff to be mailed checks to Plaintiff's address in North Carolina in the amount of $493.20 and $388.88 respectively, representing Plaintiff's agreed upon compensation for having obtained such refunds for Care Centers.

34.     Further, pursuant to the Exhibit 6 Agreement, from within North Carolina Plaintiff analyzed records of utility expenditures (gas, electricity and water) of Care Centers and Hunter Management which had been provided to Plaintiff in North Carolina, such having been done, upon information and belief, with the knowledge and approval of Rothner and Aronin in Illinois. Upon further information and belief, Aronin himself caused such records to be mailed in multiple installments to Plaintiff at its Greensboro, North Carolina address. Such records were analyzed from the standpoint of potential cost

11

savings going forward. From a review and analysis of Care Centers' and Hunter Management's said business records provided to it in North Carolina by Aronin or under his direction from Illinois, and based on Plaintiff's knowledge of the market in which Care Centers and Hunter Management did business, Plaintiff determined that the amount being paid by Care Centers and Hunter management for its gas and water services was reasonable.

35. However, following an exhaustive study, Plaintiff determined that the amount Care Centers and Hunter Management were paying for their electricity services at the Care Centers and Hunter Management locations identified on the aforesaid list attached to the Exhibit 6 Agreement was excessive by market standards. Accordingly, in accordance with the Exhibit 6 Agreement, Plaintiff, in North Carolina, identified those excesses to Care Centers and Hunter Management in Illinois and computed the potential savings to Care Centers and Hunter Management if Care Centers and/or Hunter Management were to switch to an alternative electricity provider. Further, Plaintiff provided from North Carolina to Care Centers and Hunter Management in Illinois the name of an alternative electricity provider which could implement such savings to Care Centers and/or Hunter Management were Care Centers or Hunter Management, as the case may be, to switch to such alternative provider at the nineteen (19) Care Centers locations identified on the list of locations and addresses of the Exhibit 6 Agreement and/or the single facility of Hunter Management identified on such list.

36. Following Plaintiff's identification of potential electricity cost savings as aforesaid, Plaintiff's representative Christopher Leng, from North Carolina, spoke with

12

Aronin, in Illinois, and Aronin, after acknowledging receipt of Plaintiff's aforesaid cost-savings report with respect to potential future electricity savings at the aforesaid Care Centers and Hunter Management locations, stated to Plaintiff's representative Leng that there could be no switch from the then-incumbent electricity vendor because such vendor was a "personal friend" of Rothner. Such representation by Aronin, which upon information and belief was approved or ratified by Rothner, constituted a false representation on the part of both Aronin and Rothner.

37. Thereafter, upon information and belief and notwithstanding Rothner's purported friendship with the then-incumbent electricity vendor, Care Centers and Hunter Management nevertheless did in fact switch to a new provider for their electricity services for the locations identified on the list of locations and addresses attached to the Exhibit 6 Agreement; however, Rothner and Aronin refused to respond to Plaintiff's repeated attempts to make contact by email and telephone for the purpose of requesting copies of the relevant electricity bills and other data, which bills and other data Plaintiff needed (and still needs) in order to determine cost savings to Care Centers and Hunter Management per the Exhibit 6 Agreement, and the resultant amount of compensation owed to Plaintiff per said agreement. Such refusals by Aronin and Rothner to respond to Plaintiff constituted fraudulent concealments.

38. The cost-savings uncovered by Plaintiff were intended only for the benefit of the Care Centers locations and the single Hunter Management location identified on the list of locations and addresses of the Exhibit 6 Agreement, and for no other Care Centers or Hunter Management locations. However, Plaintiff is informed, believes and

13

so alleges that Rothner and Aronin, without the consent of Plaintiff and without increasing by an appropriate sum the amount of compensation owed to Plaintiff, utilized the cost-savings data provided by Plaintiff for the benefit of other elderly care center locations operated by Care Centers and/or other facilities of Hunter Management that were not included on the aforesaid list attached to the Exhibit 6 Agreement. Such actions by Aronin were, upon information and belief, authorized or ratified by Rothner and constituted fraudulent concealments by both Aronin and Rothner.

39.     The Exhibit 4 Agreement, the Exhibit 5 Agreement, and the Exhibit 6 Agreement, with their respective lists of locations and addresses attached, are incorporated herein by reference the same as if set forth herein in their entirety.

**FIRST CLAIM FOR RELIEF**
**Accounting**
**(Against Defendant Hunter Management and Defendant Rothner)**

40.     Paragraphs 1 through 39 of this Complaint are hereby incorporated by reference herein and realleged in their entirety.

41.     Plaintiff is entitled to: (a) an accounting by Hunter Management for all rebates, refunds and/or cost savings of Hunter Management at any business premises in which it has an economic or managerial interest, which followed Plaintiff's audit-related reports and which were implemented during the term of the Exhibit 5 and Exhibit 6 Agreements; and (b) to the extent it/he has access to or has retained copies of the business records of Care Centers (whether hard copies or computer copies) as a part of its/his own business records (or the business records of any entity through which it/he has access to the records of Care Centers), an accounting by Hunter Management and/or Rothner for

14

all telephone or electricity rebates, refunds and/or cost savings of Care Centers, at any Care Centers locations (including but not limited to the locations contained on the lists attached to the Exhibit 5 and Exhibit 6 Agreements), that have been received or implemented during the term of the Exhibit 5 Agreement or the term of the Exhibit 6 Agreement.

**SECOND CLAIM FOR RELIEF**
**Unfair and/or Deceptive Trade Practices**
**(Against Defendant Rothner and Defendant Aronin)**

42.    Paragraph 1 through 41 of this Complaint are hereby incorporated by reference herein and realleged in their entirety.

43.    Upon information and belief, at all times pertinent to this action Rothner and Aronin completely dominated and controlled Care Centers and Hunter Management from Hunter Management's headquarters in Evanston, Illinois. From at or about the time of their first contact with Plaintiff, who at all times pertinent to this action was located in North Carolina, upon information and belief, Rothner and Aronin harbored an intention never to allow Care Centers or Hunter Management to pay Plaintiff any amount whatsoever for future telephone or electricity cost-savings found were any to be uncovered by Plaintiff. Moreover, while harboring such intention, both Rothner and Aronin consciously and deliberately allowed Plaintiff to engage in a massive, time-intensive analysis of thousands of pages of documents in North Carolina which they themselves authorized to be sent, or ordered to be sent, from Illinois to North Carolina for that purpose. The aforesaid harboring of intention on the part of Rothner and Aronin, as

15

well as their conscious and deliberate allowance of Plaintiff to engage in said massive, time-intensive analysis, constituted fraudulent concealments.

44.    Prior to and during the time Plaintiff was engaging in his aforesaid cost-savings analysis in North Carolina, both Rothner and Aronin, from Illinois, personally or through their duly authorized agents or representatives, represented to Plaintiff time and again, in response to Plaintiff's specific request for reassurance of the exclusivity of his entire cost-savings undertaking, that Plaintiff was the sole and exclusive person or entity engaged to undertake such project.  But for such repeated representation, Plaintiff would not have undertaken, or continued to undertake, as the case may be, such project or any remaining portion of such project. However, even while making such representations to Plaintiff, upon information and belief, both Rothner and Aronin had personal knowledge that a third party, kept secret from Plaintiff at the time, had already been engaged to perform the same analysis that Plaintiff was performing and that such third party was secretly duplicating Plaintiff's services behind the scenes.  The aforesaid representations by Rothner and Aronin to Plaintiff as to the exclusivity of Plaintiff's engagement were false representations.    The aforesaid non-disclosure by Rothner and Aronin of the existence of the aforesaid third party analyst was a fraudulent concealment.

45.    Following completion of Plaintiff's analysis in North Carolina and the submission by Plaintiff from North Carolina to Rothner and Aronin in Illinois of Plaintiff's cost-savings report, together with the  name, contact information and rates of a proposed alternative electricity vendor, Rothner and Aronin, dishonestly, disingenuously and with an intent to deprive Plaintiff of its contracted-for compensation, falsely advised

16

Plaintiff, as aforesaid, that a switch away from the then-incumbent electricity provider could not occur because he was a "personal friend" of Rothner. Nevertheless, upon information and belief, Rothner and Aronin, secretly and without telling Plaintiff, directed the aforesaid third-party to "shop" Plaintiff's findings and seek a substantially equivalent rate, or even a slightly higher rate, from a different provider, purportedly defeating the contractual obligation to pay Plaintiff for his work and to obtain an overall lower cost after factoring in Plaintiff's commission-based compensation. The aforesaid representation that Care Centers and/or Hunter Management were prevented from changing electricity vendors because of Rothner's purported personal friendship with the then-incumbent electricity provider was a false representation. The aforesaid instruction to the third party to shop Plaintiff's findings and recommendations was a fraudulent concealment.

46.     Thereafter, upon information and belief, in apparent disregard of Rothner's putative personal friendship with the then-incumbent electricity provider, Rothner and Aronin deliberately and with an intent to deprive Plaintiff of its contracted-for compensation, caused the locations and facilities identified on the list attached to the Exhibit 6 Agreement, as well as other locations and facilities of Care Centers and/or Hunter Management, to change electricity vendors to a provider other than the one recommended by Plaintiff, and refused to provide to Plaintiff any data requested by Plaintiff from which to calculate its compensatory entitlements or even to return Plaintiff's phone calls. All of the actions or omissions alleged in this paragraph constituted fraudulent concealments.

17

47.    Further, during the course of Plaintiff's performance of its cost-saving services as alleged herein, Rothner and Aronin signed or authorized the signing of "credit-check" letters prepared by Plaintiff in North Carolina and sent to Aronin in Illinois allowing Plaintiff to obtain alternate supplier quotations for the contracted-for locations and later, after such quotations had been obtained by Plaintiff in North Carolina, dishonestly and disingenuously denied having signed or authorized the signing of such letters, such denials being communicated to Plaintiff in North Carolina by said defendants while said defendants were located, upon information and belief, in Illinois. Such denials by Aronin and Rothner constituted fraudulent concealments.

48.    Rothner and Aronin, while upon information and belief located in Illinois, represented to Plaintiff while in North Carolina, or knowingly acceded to a representation to Plaintiff while in North Carolina, that a check was going to be mailed in payment for at least some of Plaintiff's services pursuant to one or more of the aforesaid three agreements, mailed no such check to Plaintiff, and knew at the time of such representation to Plaintiff that no check was going to be mailed to Plaintiff.   Such representations constituted false representations.

49.    The activities of Defendants, as more fully described hereinabove, were in and affecting commerce, had the capacity or tendency to deceive and/or constitute unfair or deceptive trade practices, and constituted violations of Chapter 75 of the North Carolina General Statutes.

50.    The aforesaid unfair and/or deceptive trade practices engaged in by Defendants have damaged Plaintiff in an amount in excess of the jurisdictional threshold

amount, and Plaintiff is entitled to have its damages trebled pursuant to N.C. Gen. Stat. § 75-16 and to recover costs and expenses (including reasonable attorneys' fees) incurred in this action pursuant to N.C. Gen. Stat. § 75-16.1.

### THIRD CLAIM FOR RELIEF
### Actual Fraud
### (Against Defendant Rothner and Defendant Aronin)

51.     Paragraphs 1 through 50 of this Complaint are hereby incorporated by reference and realleged in their entirety.

52.     Each of the false representations and each of the fraudulent concealments by Defendants Rothner and Aronin as hereinabove alleged was of a material fact.  In the case of each fraudulent concealment, such concealment also had a tendency to deceive Plaintiff under the circumstances and/or there was a duty on the part of Rothner and Aronin to disclosure to Plaintiff what was being concealed.

53.     Each said false representation was made with knowledge of its falsity or in culpable ignorance of its truth, and was made with the intent that it should be acted upon by Plaintiff.  In the case of each said fraudulent concealment, there was knowledge on the part of Rothner and Aronin that it was deceptive as to Plaintiff or would have a tendency to deceive Plaintiff.

54.     Plaintiff reasonably relied and acted to his detriment upon and/or because of each of said false representations and fraudulent concealments.

55.     Plaintiff's said reliance resulted in injury to Plaintiff.

19

## FOURTH CLAIM FOR RELIEF
### Constructive Fraud
### (Against Defendant Rothner and Defendant Aronin)

56.     Paragraph 1 through 55 of this Complaint are hereby incorporated by reference herein and realleged in their entirety.

57.     In the course of Plaintiff's dealings with Care Centers, in addition to the acts and omissions alleged above, Rothner and/or Aronin did the following: During the entire two-year period of time over which Plaintiff was entitled to compensation under the aforesaid contracts based on cost savings found, through and including approximately the end of January of 2009, they purposely failed to advise Plaintiff of any deterioration in the financial condition of Care Centers or the futility of Plaintiff asserting, or continuing to assert, any claim against Care Centers, thereby intentionally causing Plaintiff to expend substantial resources and to unnecessarily incur significant obligations for legal services, while at the same time purposely allowing Care Centers and Hunter Management to reap the benefits of the cost savings uncovered by Plaintiff.

58.     Rothner and Aronin, while engaged in the conduct more particularly described in Paragraph 57 above, were engaging in such conduct in their capacities, respectively, as President/CEO of Care Centers and Secretary/CFO of Care Centers, at a time when Care Centers was insolvent, on the verge of insolvency so as to amount to dissolution, or, for all practical purposes, in the process of winding up its affairs. Upon information and belief, such conduct further included causing Care Centers to make one or more payments to one or more of Care Centers' creditors (without paying Plaintiff any sum whatsoever) and/or causing Care Centers to make monetary distribution(s) to or for

20

the benefit of at least one or both of them that did not constitute ordinary compensation. Under such financial circumstances, each instance of such conduct, as well as other instances of improper conduct alleged in paragraphs 1 through 57 hereof and/or to be proved at the trial of this case, constituted a breach of the fiduciary duty owed by each of said defendants to Plaintiff, who was at the time and still is a creditor of Care Centers, and each instance of such conduct was, hence, constructively fraudulent as to Plaintiff. Each instance of such conduct by each of said defendants also constituted malicious conduct as to Plaintiff by each of said defendants.

59.     Plaintiff is entitled to recover from Defendant Rothner and/or Defendant Aronin, jointly and severally, all damages incurred by Plaintiff as a result of said constructive fraud, in an amount to proven at trial, but exceeding $10,000.00, together with punitive damages in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
### Quantum Meruit and Unjust Enrichment
### (Against Defendant Hunter Management, Defendant Rothner and Defendant Aronin)

60.     Paragraphs 1 through 59 of this Complaint are hereby incorporated by reference herein and realleged in their entirety.

61.     Plaintiff has conferred a benefit upon Hunter Management, Rothner and Aronin as direct or indirect owners of Care Centers, and upon Hunter Management on account of its having implemented directly Plaintiff's proposed cost-savings measures.

62.     The benefit conferred by Plaintiff was not conferred gratuitously to Hunter Management, to Rothner or to Aronin.

21

63.     Hunter Management, Rothner and Aronin have accepted such benefits from Plaintiff knowing that Plaintiff expected to be compensated for such benefits.

64.     Permitting Hunter Management, Rothner or Aronin to retain the benefits has resulted in their being unjustly enriched at the Plaintiff's expense and is inequitable.

65.     Plaintiff is entitled to recover the reasonable value of the benefits conferred by Plaintiff upon Hunter Management, Rothner and Aronin in an amount in excess of $10,000.00.

### SIXTH CLAIM FOR RELIEF
### Breach of Contract
### (Against Defendant Hunter Management)

66.     Paragraphs 1 through 65 of this Complaint are hereby incorporated by reference herein and realleged in their entirety.

67.     The Exhibit 5 Agreement and the Exhibit 6 Agreement constituted not only agreements between Plaintiff and Care Centers but also agreements between Plaintiff and Hunter Management.

68.     Hunter Management has failed to account to Plaintiff or to compensate Plaintiff for Plaintiff's services, as provided for under said agreements.

69.     Hunter Management is, hence, in breach of said Exhibit 5 Agreement and said Exhibit 6 Agreement.

70.     Plaintiff's damages resulting from such breach are in an amount in excess of $10,000.00.

**WHEREFORE,** Plaintiff respectfully prays the Court:

1.      That Plaintiff have and recover from Defendants Rothner and Aronin all actual, incidental, consequential and anticipatory damages suffered as a result of said

Defendants' aforesaid conduct as alleged in Plaintiff's Second Claim for Relief in an amount in excess of $10,000, plus interest calculated at the legal rate from and after the date allowed by law;

2.      That, further in accordance with Plaintiff's Second Claim for Relief, Plaintiff have and recover from Defendants Rothner and Aronin, jointly and severally, treble damages and attorneys' fees under N.C. Gen. Stat. §§ 75-16 and 75-16.1;

3.      That, in accordance with Plaintiff's First Claim for Relief, Defendants Hunter Management and Rothner be required to provide to Plaintiff the two-part accounting sought in Plaintiff's First Claim for Relief;

4.      That, in accordance with Plaintiff's Third Claim for Relief, Plaintiff have and recover from Defendants Rothner and Aronin, jointly and severally, all damages incurred by Plaintiff as a result of their actual fraud, in an amount to be proven at trial, but exceeding $10,000.00, together with punitive damages to be proven at trial;

5.      That, in accordance with Plaintiff's Fourth Claim for Relief, Plaintiff have and recover from Defendants Rothner and Aronin, jointly and severally, all damages incurred by Plaintiff as a result of the breach of said Defendants' fiduciary duties to Plaintiff and in perpetration of the constructive fraud upon Plaintiff as a creditor of Care Centers, in an amount to be proven at trial, but exceeding $10,000.00, together with punitive damages in an amount to be proven at trial;

6.      That, in accordance with Plaintiff's Fifth Claim for Relief, Plaintiff have and recover from Defendants Hunter Management, Rothner and Aronin, the reasonable value of the benefits conferred upon each of them by Plaintiff;

7.     That, in accordance with Plaintiff's Sixth Claim for Relief, Plaintiff have and recover from Hunter Management the full amount of its damages resulting from said Hunter Management's breach of contract;

8.     That Plaintiff recover its costs, including reasonable attorneys' fees;

9.     That Plaintiff have and recover such interest from any or all Defendants as to which it may be entitled under and pursuant to its Second through Sixth Claims for Relief;

10.    That THIS CASE BE TRIED BY A JURY; and

11.    That Plaintiff have and receive such other and further relief as to the Court may seem just and proper.

**THIS** the 31st day of December, 2009.

                                        TUGGLE DUGGINS & MESCHAN, P.A.

                                        David F. Meschan
                                        N.C. State Bar No. 2978
                                        Robert C. Cone
                                        N.C. State Bar No. 8228
                                        *Attorneys for Plaintiff*

OF COUNSEL:

Tuggle Duggins & Meschan, P.A.
P. O. Box 2888
Greensboro, NC  27402-2888
Telephone: (336) 378-1431
Facsimile: (336) 274-6590