# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Civil Action No: 1:10-CV-93

|  |  |
|---|---|
| NATIONAL UTILITY REVIEW, LLC, | ) |
|  | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| HUNTER MANAGEMENT L.L.C., ERIC ROTHNER, AND DAVID M. ARONIN, | ) |
|  | ) |
|  | ) |
|  | ) |
| Defendants. | ) |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

Jim W. Phillips, Jr.
Jennifer K. Van Zant
Benjamin R. Norman
BROOKS, PIERCE, McLENDON,
 HUMPHREY & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone: 336-373-8850
*Attorneys for Defendants*

Defendants Hunter Management L.L.C., Eric Rothner, and David M. Aronin ("collectively Defendants"), through counsel, pursuant to Rules 9(b), 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and Local Rules 7.2 and 7.3, submit the following Brief in Support of Defendants' Motion to Dismiss.

## STATEMENT OF THE NATURE OF THE MATTER

On October 30, 2007, Plaintiff sued Care Centers, Inc. ("CCI") in North Carolina state court for breach of contract. (Compl. ¶5, Ex. 1.) Prior to resolution on the merits, CCI declared bankruptcy therefore staying the State Lawsuit.

Not content to pursue its claims against CCI in Bankruptcy Court, Plaintiff has taken its old Complaint and dressed it up with some new allegations and sued two CCI officers and Hunter Management L.L.C. ("Hunter"). That case was filed on December 31, 2009 in Guilford County Superior Court and removed to this Court on February 3, 2010. This matter comes before the Court on the Defendants' Motion to Dismiss.

## STATEMENT OF FACTS

Plaintiff National Utility Review, LLC ("Plaintiff") alleges that it is in the business of auditing utility and telecommunication invoices for the purpose of determining potential cost savings to the client based upon Plaintiff's analysis of such invoices and its knowledge of the market, and uncovering billing errors. (Compl. ¶ 1.) Plaintiff alleges that it entered three contracts with CCI whereby CCI became a business client of Plaintiff. (Compl. ¶ 14; Exs. 4-6, hereinafter referred to as the "Contracts.") Plaintiff filed a lawsuit against CCI in the Superior Court of Guilford County on October

30, 2007 asserting claims for breach of contract by CCI and/or deceptive trade practices by CCI against Plaintiff (hereinafter the "State Lawsuit"). (Compl. ¶¶ 5-6, Ex. 1.) On September 18, 2008, the state trial court entered an order denying a subsequent motion to dismiss by CCI for lack of personal jurisdiction. (Compl. ¶ 8.) CCI appealed that order, and the North Carolina Court of Appeals affirmed the trial court's order. (Compl. ¶ 8.) On October 6, 2009, CCI filed a petition with the United States Bankruptcy Court for the Northern District of Illinois (Case No. 09-37217) (the "CCI bankruptcy proceeding") seeking debtor relief under Chapter 7 of the United States Bankruptcy Code. (Compl. ¶ 9.) An order for relief was entered in the CCI bankruptcy proceeding and such case remains pending. (Compl. ¶ 9.)

On December 31, 2009, Plaintiff filed this lawsuit alleging breach of the same Contracts. (Compl. ¶ 14.) Now, after CCI's bankruptcy, Plaintiff for the first time alleges that Hunter is a party to the Contracts. (Compl. ¶ 14.) This allegation contradicts the express language of the Contracts. (*See* Compl., Exs. 4-6.) In addition to the breach of contract claim, Plaintiff now asserts several tortious claims which arise out of the alleged breach of contract. (Compl. ¶¶ 42-59.)

Hunter is an Illinois limited liability company with its principal place of business at 2201 Main Street, in Evanston, Illinois. (Rothner Decl. at ¶ 3.) Hunter is in the business of managing student apartments, coordinating the financing for the purchase of elder care facilities, and monitoring the accounts receivable financing for elder care

facilities. (Rothner Decl. ¶ 3.) Hunter does not operate or do business in North Carolina and has no contacts with North Carolina whatsoever. (Rothner Decl. ¶¶ 3-4.)

Eric Rothner is a citizen and resident of Illinois. (Rothner Decl. ¶ 1.) Rothner is a manager of Hunter and was previously CEO of CCI. (Rothner Decl. ¶¶ 3, 5.) Rothner has never been to North Carolina and owns no real property or other tangible assets in North Carolina. (Rothner Decl. ¶¶ 2.) He has never personally entered into any contracts or promissory notes in North Carolina. (Rothner Decl. ¶ 2.) Rothner recalls no telephone communications with Plaintiff, and did not communicate by email, letter or any other manner with Plaintiff. (Rothner Decl. ¶ 10.)

David Aronin is a citizen and resident of Illinois. (Aronin Decl. ¶ 1). Aronin is a manager of Hunter and was previously CFO of CCI. (Aronin Decl. ¶¶ 4-5.) In his involvement with Plaintiff, Aronin acted solely in his capacity as CFO of CCI. (Aronin Decl. ¶ 8.) Aronin never dealt with Plaintiff in his capacity as manager of Hunter or on behalf of Hunter. (Aronin Decl. ¶ 8.) In the spring of 2006, Christopher Leng ("Leng") of Plaintiff contacted Aronin initially by telephone to discuss having Plaintiff perform services for CCI. (Aronin Decl. ¶ 9.) Aronin, in his capacity as CFO of CCI, signed the Contracts in Illinois and sent them back to Plaintiff. (Aronin Decl. ¶ 8.) Aronin sent copies of utility bills related to the facilities included in the attachment to Plaintiff. (Aronin Decl. ¶ 11.) Aronin never called Leng or any representative of Plaintiff. (Aronin Decl. ¶ 10.) Aronin may have responded to by e-mail to Leng but does not recall any such e-mails, and has not been able to locate any such e-mails. (Aronin Decl. ¶ 12.)

## QUESTIONS PRESENTED

1. Does this Court have personal jurisdiction over the Defendants?

2 Do Plaintiff's claims fail to state a claim of relief?

3. Should this lawsuit be stayed in favor of Care Center's bankruptcy proceeding?

## ARGUMENT

### A. This Court Does Not Have Personal Jurisdiction Over Defendants.

Personal jurisdiction is a two-part inquiry. *Christian Science Board of Directors v. Nolan*, 259 F. 3d 209, 215 (4th Cir. 2001). First, the court must determine whether North Carolina's "long-arm" statute authorizes the exercise of jurisdiction. *Id.* (citing N.C.G.S. §§1-75.4(1)(d) and 1-75.4(3)). Second, the court must determine whether the exercise of jurisdiction comports with due process. *Id.* Because North Carolina's long arm statute extends jurisdiction over a nonresident defendant to the full extent permitted by the Due Process Clause, the two-part inquiry collapses into whether the defendant has "minimum contacts" with North Carolina "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Jurisdiction can be general or specific. The Court's general jurisdiction applies where a nonresident defendant has "'substantial' or 'continuous and systematic'" activities within a forum. 259 F. 3d at 215 (citations omitted). To determine whether a nonresident defendant has sufficient minimum contacts with North Carolina to apply specific jurisdiction, courts review (1) to what extent did the defendant "purposefully

4

avail" itself of the privileges of conducting activities in North Carolina and thus invoke the benefits and protections of its laws, (2) whether plaintiff's claims arise out of the North Carolina related activities, and (3) whether the exercise of jurisdiction would be constitutionally reasonable. *Id.* at 215-16.[1]

### 1. The Exercise Of Personal Jurisdiction Over Hunter Would Violate Due Process.

Hunter is a limited liability corporation organized under the laws of Illinois with its principal place of business is in Evanston, Illinois. (Compl. ¶ 2.) Hunter does not operate or do business in North Carolina. (Rothner Decl. ¶¶ 3-4.) Therefore, Hunter lacks substantial or continuous and systematic activities in North Carolina to be subject to general jurisdiction. Moreover, since Hunter undertook no activities with respect to the contracts at issue, Hunter lacks sufficient minimum contacts to be subject to specific jurisdiction.

A plain reading of the Contracts reveals that they are between only CCI and Plaintiff. In the State Lawsuit, Plaintiff never alleged that Hunter was a party to the any of the Contracts. (Compl., Ex. 1.) Now, Plaintiff alleges that Aronin signed two of the Contracts in his capacity as CFO of CCI and "also as manager of Hunter [], and/or within the course of scope of his duties and responsibilities as manager of Hunter [] and/or for the benefit of Hunter []." (Compl. ¶ 14.) That allegation is directly contradicted by the Contracts. Aronin signed the Contracts only as the CFO of CCI, as evidenced by his

---

[1] In evaluating a Motion to Dismiss under Rule 12(b)(2), courts may consider declarations and legal memoranda, as well as the allegations of the complaint. *Hill-Rom Services, Inc. v. Verses Technology, Inc.*, 2006 WL 1540851, at *6 (M.D.N.C. 2006) (citing *Comb v. Baker*, 886 F.2d 673, 676 (4th Cir. 1989)).

5

signature and reference to his title. (Aronin Decl. ¶ 8.) Aronin's contacts in his role for CCI cannot be imputed to Hunter simply because Aronin is a manager of Hunter. *See Blue Mako, Inc. v. Minidis*, 472 F.Supp.2d 690, 701 (M.D.N.C. 2007) ("Contacts between related corporate entities are generally not imputed one to another.") (citation omitted). Other than Plaintiff's conclusory allegation, there is nothing to suggest that Aronin acted on behalf of Hunter. *See WLC v. Watkins*, 454 F.Supp.2d 426, 434 (M.D.N.C. 2006) ("Plaintiff's allegation that David Watkin's actions may be imputed to the Defendant-companies is a mere legal conclusion which is not sufficient to withstand the Defendant-companies' motion to dismiss based on lack of personal jurisdiction.") As in *Watkins*, Plaintiff cannot prove that Aronin was acting on behalf of Hunter rather than CCI, the expressly named party to the Contracts. *See id.* Thus, the only way that Hunter can be liable is if the corporate veil of CCI is pierced to reach Hunter. *See id.* (citing *Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F.Supp.2d 639, 647 (D.S.C. 2005)).

There is no evidence that Hunter is an alter ego of CCI. Hunter and CCI have distinct corporate structures, are financially independent, and respect corporate formalities. (Rothner Decl. ¶ 8.) The law of Illinois provides:

> In determining whether the requisite degree of control is maintained by one corporation over the affairs of another to justify disregarding their separate corporate identities, the Illinois courts have considered some of the following: (1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another corporation as its own.

*Van Dorn Co. v. Future Chemical and Oil Corp.*, 753 F.2d 565 (11th Cir. 1985). None of these factors is present (Rothner Decl. ¶ 8.) Moreover, as provided in the argument below, any claim to pierce the corporate veil of CCI is the province of the bankruptcy trustee. *See infra*, Part C.

Finally, because Plaintiff admits that it initiated the relationship that led to the Contracts (Compl. ¶ 13), that factor is given "great weight" in disfavoring the assertion of personal jurisdiction against Defendants. *Watkins*, 454 F.Supp.2d at 437. Thus, there is no basis for personal jurisdiction over Hunter.

### 2. This Court Has No Personal Jurisdiction Over Rothner Or Aronin.

#### a. Individual Capacity.

Rothner and Aronin are citizens and residents of Illinois. Neither has personally entered into any contracts or promissory notes in North Carolina. Neither has ever personally conducted any business in North Carolina. Neither owns any real property or other tangible assets in North Carolina. Neither maintains a bank account in North Carolina. Neither has even visited North Carolina, except for Aronin's one visit for the voluntary mediation in the State Lawsuit. (Rothner Decl. ¶ 2; Aronin Decl. ¶¶ 2-3.) Thus, neither is subject to personal jurisdiction in this Court solely upon their individual contacts.

#### b. Capacity As Officers Of CCI Or Managers Of Hunter.

Plaintiffs allege that Rothner and Aronin, in their capacities as officers for CCI and/or Hunter, acted tortiously and are therefore subject to personal jurisdiction in North

7

Carolina. As an initial matter, even if Rothner or Aronin are found to be liable for the alleged tortious acts, each may be entitled to indemnification from CCI and therefore these claims are improper outside of the CCI bankruptcy proceeding. *See infra*, Part C.

### (i). Rothner.

Rothner had no contacts with Plaintiff. (Rothner Decl. ¶ 10.) Rothner recalls no telephone communications with Plaintiff, and did not communicate by email, letter or any other manner with Plaintiff. (Rothner Decl. ¶ 10.) Therefore, to the extent that Plaintiff vaguely alleges the possibility of direct communications by Rothner with Plaintiff (*see, e.g.*, Compl. ¶¶ 44, 57), those allegations are simply false.

Aware of the lack of direct communications, Plaintiff asserts conclusory allegations concerning Rothner's purported authorization of statements made by Aronin on behalf of CCI and/or Hunter. (*See, e.g.*, Compl. ¶¶ 36, 38, 44, 47). However, these actions, which are actions of a corporation, cannot be imputed to Rothner simply because he is an officer of Care Center and a manager of Hunter. *See May Apparel Group, Inc. v. Ava Import-Export, Inc.*, 902 F.Supp. 93, 97 (M.D.N.C. 1995) ("It is also well established that a corporation is a separate and distinct legal entity [from] its officer and directors. Thus, corporate employees are not subject to personal jurisdiction, even as to the employee's corporate activities unless the employee has sufficient minimum contacts with the forum.")(citations omitted). To the extent that Plaintiff alleges that Rothner authorized misrepresentations, any authorization would have taken place in Illinois and cannot subject Rothner to being haled into North Carolina.

> [I]f the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally by reason of service under the long-arm statute of the forum state.

*Columbia Briargate Co. v. First Nat's Bank*, 713 F.2d 1052, 1064-65 (4th Cir. 1983).

Moreover, even if Rothner had himself made the alleged misrepresentations to Plaintiff, such misrepresentations would not form the basis for personal jurisdiction over Rothner. As the Court reasoned in *Eagle Paper International v. Expolink*, 2008 WL 170506 (E.D. Va. Jan. 17, 2008) in determining that personal jurisdiction was lacking:

> The only specific contacts asserted by Eagle involve misrepresentations by Mamlin and Sasson allegedly made in telephone calls and e-mails to Plaintiff in Virginia. As already discussed, such communications alone do not form a basis for personal jurisdiction.

2008 WL 170506, at *5.

Without personal contacts between Rothner and North Carolina, Rothner cannot be subject to personal jurisdiction in North Carolina.

### (ii).   Aronin.

Aronin acted solely in his capacity as CFO of CCI while dealing with Plaintiff. (Aronin Decl. ¶ 8.) Unlike Rothner, Aronin did have limited contacts with Plaintiff. Although those contacts were found sufficient by the North Carolina courts to subject CCI to personal jurisdiction,[2] those contacts do not meet the minimum threshold to subject Aronin individually to being haled into court in North Carolina. The initial

---

[2] This Court and Aronin, moreover, are not bound by those findings.

contact between Aronin and Leng occurred when Leng called Aronin at Aronin's office in Illinois.  (Compl. ¶ 13.)  Aronin signed the Contracts in his capacity as CFO of CCI. (Aronin Decl. ¶ 8.)  Aronin did not contact Plaintiff by telephone.  (Aronin Decl. ¶ 10.) Any telephone contact between Aronin and Leng occurred when Leng called Aronin. (Aronin Decl. ¶ 10.)  Aronin received emails from Leng but does not recall responding to any emails.  (Aronin Decl. ¶ 12.)  Aronin sent copies of approximately two months of utility bills for CCI and for the facilities referenced in the attachments to the Contracts. (Aronin Decl. ¶ 11.) Plaintiff alleges that Aronin signed "credit-check" letters sent by Plaintiff and returned them to Plaintiff.  (Compl. ¶ 47.)  Phone calls and emails are not enough to subject Aronin to personal jurisdiction in North Carolina.  *See Watkins*, 454 F.Supp.2d at 436-37 ("[A]n exchange of communications between two parties, one of whom is located in the forum state, in furtherance of a contract, will not generally constitute purposeful contact with the forum state for purposes of jurisdiction."); *Eagle*, 2008 WL 170506, at *5 ("It is well settled that mere telephone calls and electronic communications in furtherance of a transaction are insufficient to constitute purposeful activity [for personal jurisdiction].") (collecting cases).   Moreover, Aronin's sparse contacts were "aimed" at the Plaintiff who is located in North Carolina rather than "aimed" at North Carolina itself.  *See Sea-Roy Corp. v. Parts R Parts, Inc.*, 1996 WL 557857, at *6 (M.D.N.C. 1996).

Further, it is only Aronin's contacts that are related to the causes of action alleged against Aronin that are germane to the specific personal jurisdiction analysis.  In *Blue*

*Mako*, the Court found that the conclusory and speculative allegations directed at one corporate officer were insufficient for personal jurisdiction. *Blue Mako, Inc. v. Minidis*, 472 F.Supp.2d 690, 701-702 (M.D.N.C. 2007). Here, the alleged tortious behavior occurred outside of North Carolina. *Eagle Paper*, 2008 WL 170506, at *5 (E.D. Va. Jan. 17, 2008). Thus, Aronin is not subject to personal jurisdiction in North Carolina.

## B.    Plaintiff's Claims Fail As A Matter of Law.

Recently, in *Nemet Chevrolet v. Consumeraffairs.com*, 591 F.3d 250 (4th Cir. 2009), the Fourth Circuit set forth the standard to apply to a Rule(12)(b)(6) motion to dismiss after *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009):

> As noted above, in evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint. But we also conclude from the analysis in *Iqbal* that legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes. We also decline to consider "unwarranted inferences, unreasonable conclusions, or arguments."
>
> Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Facial plausibility is established once the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "'across the line from conceivable to plausible.'"
>
> Satisfying this "context-specific" test does not require "detailed factual allegations." The complaint must, however, plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." Without such "heft," the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability," fail to nudge claims "across the line from conceivable to plausible."

*Nemet*, 591 F.3d at 255-56 (citations omitted).  The Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).  Applying this standard, all of Plaintiff's claims should be dismissed.

**1.    Plaintiff's Fraud Claim Should Be Dismissed As A Matter Of Law.**

**a.  Plaintiff's Fraud Claim Does Not Meet The Pleading Requirements Of Rule 9(b).**

Plaintiff's claim of fraud requires the pleading of five "essential elements: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage." *Jolly v. Acad. Collection Serv.*, 400 F.Supp.2d 851, 864 (M.D.N.C. 2005) (citation omitted).  Fraud allegations are subject to the heightened pleading requirements of Rule 9(b) under both federal and North Carolina law. *Id*. "This generally means that a plaintiff must plead the "time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *Id.* (citing *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981)) (other citations omitted).  To plead a fraud by omission, a plaintiff must plead with particularity:

> (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both

12

reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

*Breeden v. Richmond Community College*, 171 F.R.D. 189, 195-96 (M.D.N.C. 1997) (citations omitted).

Plaintiff has not plead the "who, where, what, [and] when" required by Rule 9(b). *See TSC Research, LLC v. Bayer Chemicals Corp.*, 552 F.Supp.2d 534, 544 n. 3 (M.D.N.C. 2008) ("The who, where, what, when has to be identified for every single misrepresentation that was made; and you also have to at that same time set out and show why that was a materially false statement.") One primary and repeating deficiency found in Plaintiff's allegations is the identity of the person making the statement or failing to make a statement. Plaintiff vaguely refers repeatedly to "Rothner or Aronin ... personally or through their duly authorized agents or representatives" as the identity of the person making a misrepresentation or omission. (*See, e.g.*, Compl. ¶ 44.) This Court has described the significance of this failure:

> The identity of those making the misrepresentations is crucial. Courts have been quick to reject pleadings in which multiple defendants are "lumped together" and in which "no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made, nor the identity of the individual by whom and to whom the statements were given, nor the situs and circumstances of the conversation, nor ... the date of the utterance."

*Breeden*, 171 F.R.D. at 197 n.8 (citations omitted).

The allegations also lack specificity as to the time that that the misrepresentation or omission occurred. Such vagueness is cause for dismissal under Rule 9(b) and certainly suggests that Plaintiff's claims may be barred by the applicable statute of

13

limitations. *Mullinax v. Radian Guar., Inc.*, 311 F.Supp.2d 474, 488-89 (M.D.N.C. 2004).

### b.   Plaintiff's Fraud Claim Is Merely A Claim For Breach Of Contract.

In addition, Plaintiff's fraud claims should be dismissed because a close reading of the Complaint reveals that this is merely a contract dispute.   "[An] attempt to turn a contract dispute into a tort action with an accompanying punitive dimension is inconsistent both with North Carolina law and sound commercial practice." *Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp.*, 15 F.3d 327, 329 (4th Cir. 1994).   "The mere failure to carry out a promise in contract, however, does not support a tort action for fraud." *Id.* at 331 (citing *Hoyle v. Bagby*, 253 N.C. 778, 117 S.E.2d 760, 762 (1961); *In re Baby Boy Shamp*, 82 N.C. App. 606, 347 S.E.2d 848, 853 (1986)).   Plaintiff's mere assertion that Defendants did not intend to honor their obligations under the Contracts does not state a fraud claim. *Strum*, 15 F.3d at 331.

### c.   Plaintiff Fails To Allege That Any Fraudulent Conduct Proximately Caused Damages.

Plaintiff generally alleges several false representations which occurred after the contracts were allegedly breached.   Plaintiff provides no facts which support a conclusion that the representations led to any damages to Plaintiff.   "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet*, 591 F.3d at 255 (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1939).   Absent factual allegations "linking" the claimant's harm to the defendant's conduct, the claim must be dismissed. *See Glaser v.*

*Enzo Biochem, Inc.*, 464 F.3d 474, 479 (4th Cir. 2006) (dismissing common law fraud for failure to plead facts creating "an actual causal connection"). The failure to allege any harm or any link between that harm and any alleged fraud by Defendants is fatal to Plaintiff's claim for fraud.

### 2. Plaintiff's Claims Under N.C.G.S. § 75-1.1 ("UTPA") Also Fail.

Plaintiff's UTPA claim in this lawsuit appears to be based on the allegations of fraud as Plaintiff merely incorporates the allegations in the deceptive trade practices claim into its fraud claim and recites the elements for fraud. (*See* Compl. ¶¶ 51-55.) Due to the failure of those fraud claims shown above, the deceptive trade practices claim should be dismissed.

However, the prior State Lawsuit demonstrates the true nature of the instant UTPA claim. In the State Lawsuit, Plaintiff brought three claims: (i) breach of contract; (ii) accounting; and (iii) UTPA. (Compl., Ex. 1.) Again, CCI was the only defendant in the State Lawsuit. Plaintiff's UTPA claim in the State Lawsuit was based on the "substantial aggravating circumstances" attendant to CCI's alleged breach of the Contracts. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998). With CCI in bankruptcy, Plaintiff now attempts to reconfigure this claim, but it remains nothing more than a contract claim. "A mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Broussard*, 155 F.3d at 347. "Given the contractual center of this dispute, plaintiffs' UTPA claims are out of place." *Id.*

15

### 3. Plaintiff's Constructive Fraud Claim Fails.

To plead a claim for constructive fraud, Plaintiff must allege: "(1) a relationship of trust and confidence; (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that the plaintiff was as a result injured." *Strickland v. Lawrence*, 176 N.C. App. 656, 627 S.E.2d 301 (2006). "[A] fiduciary relationship will not exist between parties in equal bargaining positions dealing at arm's length, even though they are mutually interdependent businesses." *Id.* at 662-63, 627 S.E.2d at 305-306. Plaintiff makes no allegation of unequal bargaining status. Thus, the first element to plead a constructive fraud is absent, and the claim should be dismissed.

Plaintiff appears to base its constructive fraud claim on an assertion that Rothner and Aronin owed it a fiduciary duty. Directors of a corporation do not generally owe a fiduciary duty to creditors. *Angell v. Kelly*, 336 F.Supp.2d 540, 550-51 (M.D.N.C. 2004) (citing *Keener Lumber Co., Inc. v. Perry*, 149 N.C. App. 19, 560 S.E.2d 817 (2002)). An exception arises "only when the corporation is insolvent, 'is in declining circumstances and verging on insolvency,' or 'where such facts establish circumstances that amount "practically to a dissolution."'" *Id.* at 551 (quoting *Keener*, 149 N.C. App. at 29-30, 560 S.E.2d at 824-25). Plaintiff attempts to make its constructive fraud claim by merely repeating these key words from *Keener*. However, *Iqbal* makes clear that Plaintiff's mere "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" mandate the dismissal of this claim. *Nemet*, 591 F.3d at 255-56. Thus, Plaintiff's claim for constructive fraud fails and should be dismissed.

16

**4.    Plaintiff's Claim For Breach Of Contract Against Hunter Should Be Dismissed.**

The Contracts are between Plaintiff and CCI, not Hunter.  CCI is defined as the "client" and Aronin signed as the CFO of the client.  (Compl., Exs. 4, 5, 6.)  Therefore, Plaintiff cannot assert its breach of contract claim against Hunter.  *Keith v. Day*, 81 N.C. App. 185, 200, 343 S.E.2d 562, 571 (1986) (finding corporate defendant should have been dismissed where contract was only between plaintiff and individual defendant); *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1344-45 (7th Cir. 1983) (applying same principle under Illinois law).

To the extent Plaintiff is alleging that  the corporate veil of CCI should be pierced to reach Hunter, that claim is not adequately alleged in the Complaint.  Moreover, any claim to pierce the veil of CCI belongs in the CCI bankruptcy proceeding.  *See infra*, Part C.  Thus, the claim must be dismissed.

**5.    Plaintiff's Claim For Quantum Meruit And Unjust Enrichment Also Fails.**

An alternative quantum meruit claim is viable only in the absence of an express contract.  *Keith*, 81 N.C. App. at 198, 343 S.E.2d at 570.  Here, it is undisputed that three express contracts governed the parties' relationship.  Thus, there can be no quantum meruit claim.

### 6. Plaintiff's Claim For Accounting Fails.

Plaintiff's accounting claim fails because it merely seeks to engage in discovery and assumes that it has prevailed on its breach of contract claim against CCI. If that claim exists at all, it belongs in the CCI bankruptcy proceeding.

## C. Plaintiff's Claims Belong In The CCI Bankruptcy Proceeding.

Plaintiff's claims should be dismissed pursuant to Rule 12(b)(1) because they belong in the CCI bankruptcy proceeding. Pursuant to 11 U.S.C. § 362, all actions against a debtor are subject to an automatic stay pending resolution of the bankruptcy proceedings.[3] The automatic stay applies to non-debtor third parties "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Piccinin*, 788 F.2d at 999. The automatic stay applied to debtor CCI should be extended to Defendants for two reasons: (1) debtor CCI's corporate bylaws provide for absolute indemnification for judgments which may be obtained in this lawsuit; and (2) Plaintiff's allegations that Defendants are alter egos of debtor CCI must be litigated in the Bankruptcy Court.

### 1. Rothner And Aronin Would Be Entitled To Absolute Indemnification From Debtor CCI.

The automatic stay is extended to non-debtor third parties who are "entitled to absolute indemnity by the debtor on account of any judgment that might result against

---

[3] The purpose of the automatic stay "is to protect the debtor from an uncontrollable scramble for its assets" and to "insure[] that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 998 (4th Cir. 1986) (citations omitted).

them in the case." *Piccinin*, 788 F.2d at 999. "To refuse application of the statutory stay in that case could defeat the very purpose and intent of the statute." *Id*. Article X of the CCI Bylaws provides for indemnification of directors, officers and employees.[4] The law of CCI's state of incorporation, Illinois, likewise provides for indemnification of Rothner and Aronin. *See* 805 Ill. Comp. Stat. 5/8.75.

The involvement of Rothner and Aronin with Plaintiff at issue in this case is limited to actions that each took, if at all, while acting in their capacity as officers. Therefore, under CCI's Bylaws and Illinois state law they have the right to indemnification from CCI for any judgment entered against them. Pursuant to *Piccinin*, this lawsuit must be stayed in favor of the CCI bankruptcy proceeding.

### 2. Plaintiff's Alter Ego Allegations Require That This Lawsuit Be Stayed.

Plaintiff alleges that Rothner and Aronin "completely dominated and controlled CCI and Hunter Management." (Compl. ¶ 43.) Plaintiff may also be attempting to pierce the veil of Hunter Management as an alter ego of CCI. Although Defendants dispute these allegations, any alter ego claims now belong exclusively to the CCI bankruptcy trustee and must be resolved in the CCI bankruptcy proceeding. *See Holcomb v. Pilot Freight Carriers*, 120 B.R. 35, 44 (M.D.N.C. 1990) (staying claims against non-debtors where Plaintiff sought to use the alter ego doctrine). "State law determines whether property is an asset of the debtor." *Koch Refining v. Farmers Union Central Exchange,*

---

[4] Article X provides: "[a]ny person made a party to any action, suit or proceeding, by reason of the fact that he … is or was a director, officer or employee of the Corporation, … shall be indemnified by the Corporation against the reasonable expenses . . .actually and necessarily incurred by him in connection with the defense of such action, suit or proceedings or in connection with any appeal therein, [except in instances of negligence or misconduct]." The CCI Bylaws are attached as Exhibit 1 to the Declaration of Eric Rothner.

*Inc.*, 831 F.2d 1339, 1346 (7th Cir. 1987). Under the law of Illinois, the state of incorporation of CCI and therefore the law controlling the corporate veil issue, an alter ego claim belongs to the CCI bankruptcy proceeding. *See Koch,* 831 F.2d at 1344. Accordingly, Plaintiff's action against all Defendants should be stayed or dismissed.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Respectfully submitted this 2nd day of March, 2010.

/s/ Jim W. Phillips, Jr.
Jim W. Phillips, Jr.
N.C. State Bar No. 12516
jphillips@brookspierce.com

/s/ Jennifer K. Van Zant
Jennifer K. Van Zant
N.C. State Bar No. 21280
jvanzant@brookspierce.com

/s/ Benjamin R. Norman
Benjamin R. Norman
N.C. State Bar No. 32852
bnorman@brookspierce.com
*Attorneys for Defendants*

OF COUNSEL:

BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone: 336-373-8850

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2010, I electronically filed the foregoing **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David F. Meschan
Robert C. Cone
Tuggle Duggins & Meschan, P.A.
P.O. Box 2888
Greensboro, NC 27402-2888
dmeschan@tuggleduggins.com
rcone@tuggleduggins.com
*Attorneys for Plaintiffs*


/s/ Benjamin R. Norman
Benjamin R. Norman